IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COURTNEY B. WALKER,
   *Petitioner*,

v.

UNITED STATES OF AMERICA,
   *Respondent*.

Crim. No. ELH-15-00565
Related Civil No. ELH-18-0593

**MEMORANDUM OPINION**

This Memorandum Opinion resolves a Motion To Vacate, Set Aside, Or Correct Sentence (the "Petition"), filed under 28 U.S.C. § 2255 by Courtney Walker, the self-represented Petitioner. ECF 389. The Petition is supported by exhibits. *See* ECF 389-2. In sum, Petitioner alleges ineffective assistance of counsel, claiming his attorney failed to object to the decision of the trial judge not to award credit for time that Petitioner spent in State custody on a matter related to the underlying federal offenses.

The government opposes the Petition. ECF 14. It has also provided the Court with several exhibits. Mr. Walker has not replied, and the time to do so has expired.

Under 28 U.S.C. § 2255(b), a hearing is required "[u]nless the motion and the files and records of the case conclusive show the prisoner is entitled to no relief . . . ." This is such a case. No hearing is necessary. For the reasons that follow, I shall deny the Petition.

     **I.**    **Procedural and Factual Background**

Petitioner was indicted on October 27, 2015, along with twelve codefendants. ECF 1. He was charged with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count One); bank fraud, in violation of 18 U.S.C. § 1344 (Count Ten); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count Eleven). *Id.*

On December 1, 2016, Petitioner entered a plea of guilty before Judge Marvin J. Garbis, to whom the case was then assigned, as to Counts One and Eleven. ECF 188.[1]  The plea was entered pursuant to a Plea Agreement.  ECF 189.

The government has submitted a copy of the transcript for the guilty plea proceeding.  *See* ECF 417-1.  At that proceeding, the prosecutor advised the court that the government was restricting its loss calculation to losses that occurred within the State of Maryland.  *Id.* at 17.

Defense counsel informed the court that the defendant had been "continuously incarcerated for more than three years" as of that time.  *Id.* at 19.  Therefore, he told the court that he would be asking the court "to vary from the sentence at the time of sentencing because [the defendant] effectively doesn't get credit for those three years because he's serving another sentence, even though it's substantially related conduct to this case because it's doing the same thing with the same people, albeit in South Carolina state."

Defense counsel submitted a sentencing memorandum, which addressed several issues. ECF 325.  Among them, defense counsel reiterated that the defendant was incarcerated in South Carolina "for exactly the same type of conduct that makes up the charges at bar, albeit in a different state."  *Id.* at 2.

Sentencing was held on August 3, 2017.  ECF 336.  A copy of the Sentencing Transcript is docketed at ECF 417-2.

At sentencing, defense counsel again pursued the matter of the time that defendant had spent serving a South Carolina sentence on related conduct.  Defense counsel told Judge Garbis that the defendant had already "been locked up four years [as of] next month in South Carolina for essentially doing the same thing . . . ."  ECF 417-2 at 17.  Further, defense counsel expressly made

---

[1] Due to the retirement of Judge Garbis, the case has been reassigned to me.

the point that the Bureau of Prisons ("BOP") "won't give credit for that South Carolina time, because it's time credited against another sentence." *Id.* at 18.

The prosecutor also addressed the matter stating, in part, *id.* at 19: "[S]tarting the day that his South Carolina sentence ended officially according to South Carolina authorities, he will get credit that will be applied to this sentence starting on that date." Judge Garbis noted that the defendant's "federal sentence starts when the South Carolina sentence ended." *Id.* The court agreed that, in effect, the defendant would receive a consecutive sentence. *Id.* at 19-20. Defense counsel reiterated that such a result "seems harsh", and he urged the court to impose a variant sentence. *Id*. at 20.

The court made clear, however, that the matter of credit must be resolved by the BOP. He indicated that the defendant would have the right to contest the BOP's decision in the court located "wherever he's incarcerated." *Id.* at 21.

Judge Garbis imposed a total sentence of five years. ECF 417-2 at 32; ECF 339. Thereafter, defense counsel asked, ECF 417-2 at 33: "So the record is clear, is the sentence of this Court concurrent with the South Carolina sentence?" The court responded, *id.*: "No. It's consecutive to the South Carolina sentence."

A few weeks after sentencing, Mr. Walker wrote a letter to Judge Garbis, claiming that the government had promised, and the court said, he should get credit for time served in the South Carolina case. ECF 417-3 at 3-4. Judge Garbis circulated the letter to the attorneys. *Id.* at 1-2.

Judge Garbis again wrote to counsel on September 12, 2017. ECF 417-4. He indicated that he saw no basis to support defendant's factual or legal assertions. *Id.*

On September 25, 2017, Walker filed a "Motion For Nunc Pro Tunc And Clarification [sic] Of Jail Credit of Time Served." ECF 417-6. Judge Garbis issued a Memorandum and Order on

3

September 26, 2017, denying the motion. ECF 417-7. Among other things, Judge Garbis stated, *id.* at 1: "Defendant's factual assertions supporting the motion are not correctly stated." He added, *id.* at 2: "Defendant Walker's statement of alleged pertinent facts in the motion is not accurate." Judge Garbis noted that there was no such agreement in the Plea Agreement and no promise to this effect was made at the guilty plea proceeding. *Id.* at 2-3.

Defendant again wrote to Judge Garbis in a letter received by Judge Garbis on November 30, 2017. ECF 417-8. Judge Garbis responded the same day. ECF 417-9.

Petitioner also filed an Administrative Remedy, raising the same challenge. ECF 389-2. The ruling was adverse to the defendant. In a decision of January 26, 2018, Ian Connors, Administrator, National Inmate Appeals, advised that, under 18 U.S.C. § 3585(b), Walker is not entitled to credit for any period of incarceration that is "credited against another sentence." ECF 389-2 at 4. In other words, Petitioner cannot receive credit for the service of the South Carolina sentence. Petitioner was told that he received credit for time spent in federal custody after his State sentence ended on March 2, 2017, through August 2, 2017, and again beginning with the imposition of the federal sentence on August 3, 2017. *Id.* at 5.

## II. Discussion

### A.

Section 2255(a) of Title 28 of the United States Code, under which Walker filed his Petition, provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack.

Pursuant to 28 U.S.C. § 2255(b), the court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *See*, *e.g.*, *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Courts have determined that a hearing is not necessary where "the motion . . . fail[s] to allege sufficient facts or circumstances upon which the elements of constitutionally deficient performance might properly be found [or] where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *accord United States v. McGill*, 11 F.3d 223, 225-26 (1st Cir. 1993). On the other hand, a hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve this issue." *United States v. Robertson*, 219 Fed. App'x 286, 286 (4th Cir. 2007); *see also United States v. Ray*, 547 Fed. App'x 343, 345 (4th Cir. 2013).

In reviewing the Petition, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same). Nevertheless, in my view, no hearing is necessary to resolve any claim in the Petition.

**B.**

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ___ U.S. ___, 137 S. Ct. 759, 775 (2017). Ineffective assistance of counsel is a well recognized basis for relief under § 2255. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Winbush*, ___ F.3d ___, 2019 WL 1770010, at *2 (4th Cir. April 23, 2019); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 2019 WL 1770010, at *2; *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013).

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Powell*, 850 F.3d

at 149. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court recently reiterated that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. In *Padilla*, the Court said, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," *Richter*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

7

proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. However, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court...to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

**C.**

"[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428). In other words, the movant must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

The scope of collateral attack under § 2255 is far narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, ___ U.S. ___, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Thus, any failure to raise

a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)). *See Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) ("the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *United States v. Linder*, 552 F.3d 391 (4th Cir. 2009).

Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see also Dretke*, 541 U.S. at 393; *Reed*, 512 U.S. at 354; *Frady*, 456 U.S. at 167-68.

In order to show cause for failure to raise a claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded the efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see also Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effect assistance of counsel"). Additionally, the alleged error cannot simply create "a *possibility* of prejudice," but must be proven to work to

9

the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Put another way, prejudice does not support relief of a procedural default in the absence of a showing of cause. *Carrier*, 477 U.S. at 494; *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

Walker did not challenge on appeal the Court's determination as to a consecutive sentence or the failure to award credit for the time he served in a South Carolina penal institution. To that extent, he has defaulted. In any event, this is a matter for the Bureau of Prisons. *See United States v. Wilson*, 503 U.S. 329, 334-35 (1992).

Notably, defendant did pursue his administrative remedies. However, it does not appear that he sought judicial review of the BOP's decision by filing suit in the jurisdiction where he is incarcerated. *United States v. Hughes*, 491 Fed. App'x 451 (4th Cir. 2012); *United States v. Miller*, 871 F.2d 488, 489-90 (4th Cir. 1989).

In any event, it is quite clear that, on the merits, the claim fails. Defense counsel repeatedly and vigorously advocated on behalf of Mr. Walker in regard to seeking a sentencing variance because defendant would not receive credit for the time he served on the state sentence in a related case. Defense counsel raised this matter at the time of the guilty plea and again at the time of sentencing. It was up to Judge Garbis to determine whether, in some way, he was willing to reduce defendant's federal sentence or otherwise give him credit because of the time the defendant was incarcerated on the state sentence. The judge's decision not to credit the defendant with time served in a state penal facility was totally within his discretion, and not the fault of defense counsel.

In sum, the ineffective assistance claim is specious.

### III. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).[2]

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. at 773. Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

As indicated, a COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because Petitioner has not made a substantial showing of the denial of his constitutional rights, I decline to issue a COA.

An Order follows.

Date: May 14, 2019                       /s/
                                                            Ellen L. Hollander
                                                            United States District Judge

---

[2] The denial of a COA by the district court does not preclude Petitioner from seeking a COA from the appellate court.